### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

### UNDER SEAL

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Case No.  21-cr-00539-1 (TSC)** |
| | * | |
| **NICHOLAS J. PERRETTA,** | * | |
| **Defendant** | * | |

### NICHOLAS PERRETTA'S SENTENCING MEMORANDUM

Nicholas J. Perretta, by his undersigned counsel, hereby submits the following memorandum in aid of sentencing in this matter.  As more fully set forth below, Mr.  Perretta is among the least culpable group of defendants who walked into the Capitol building.  He did not engage in any confrontation with law enforcement, nor personally cause any damage, nor promote any debunked conspiracy theories.  He has sincerely and promptly accepted responsibility for his part in the chaos that erupted at the United States Capitol on January 6.  Based on all of the facts and circumstances, Mr. Perretta respectfully requests that the Court impose the same sentence imposed on similarly situated defendants who have been convicted of the same misdemeanor – a period of probation.  Such a sentence is "sufficient, but not greater than necessary" to promote the purposes of sentencing as required by 18  U.S.C. § 3553(a).  A sentence that does not include a term of imprisonment is also consistent with the Probation Officer's recommendation.  *See, e.g.* Sentencing Recommendation (ECF 54).

### INTRODUCTION

Mr. Perretta is a 27-year old young man, who until the instant offense, has lived a law-abiding exemplary life.  A product of a working-class family, he put himself through college, by first

attending community college. After community college, he transferred to a local university to obtain his bachelor's degree.  Throughout his education he has taken out student loans (which he still owes) and worked to pay for tuition and living expenses. Like a number of young people who first entered the job market during the pandemic while businesses were struggling to stay afloat, he has had to improvise to earn a living.  Nonetheless, he has become a small business owner, all through his own efforts.  He has no prior convictions or arrests.  Indeed, other than  traffic infractions, he has no prior contacts with law enforcement.

Mr.  Perretta entered a guilty plea to one count of Parading, Demonstrating, or  Picketing in a Capitol Building, in violation of 40  U.S.C. § 5104(e)(2)(G), for his participation in the events on January 6, 2021, which carries a maximum sentence of 6 months imprisonment. On that day, he attended the "Save America" political rally, where then-President Trump encouraged listeners to march to the Capitol to make their voices heard. After the rally, Mr. Perretta, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside.  Mr. Perretta did not participate in any violence, destruction of property, and did not have any negative confrontations with law enforcement while entering or exiting the  building. Mr. Perretta will appear for sentencing on January 5, 2022.  He has reviewed the Pre-Sentence Investigation Report and does not has a minor correction to its contents, not material to the sentencing determination.[1]

From the start, Mr.  Perretta has accepted responsibility for his conduct.  He voluntarily spoke to the FBI when he was first approached and granted permission to access his smart phone.  Within

---

[1]   The PSR ¶59 states that Mr. Perretta purchased an automobile for $2200 but in fact he currently owes approximately $1600 on the original $19,000 loan which he obtained to purchase the car.   PSR ¶64 referencing his self-employment situation should be updated to reflect that in December 2021, Mr.  Perretta formed an LLC, with himself as the sole-member, to formalize his self-employment activities.

weeks of his arrest and counsel's appointment, before he had received discovery, he reached out through counsel to resolve the case without a trial. Although there are a scant few text messages with friends about his entry into the Capitol, there are no social posts promoting the breach of the Capitol, debunked conspiracy theories about the election, interference with the workings of government, nor advocating violence.

He entered the United States Capitol through an already opened door. He had no confrontation with law enforcement or engage in any violence, nor did he damage any property. Contrary to the government's contention, Mr. Perretta did not take any papers from the Capitol. The CCTV video the government produced in discovery shows that Mr. Perretta momentarily picked up some papers that were on the ground, looked at them, then left them where he found them and walked away.[2] In sum, he is among the least culpable group of defendants who walked into the Capitol building. He has sincerely accepted responsibility for his conduct.

## ARGUMENT

### I.     Legal Standard

Congress requires federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing.

> Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by what is known as the parsimony principle, a broad command that instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation.

---

[2] *See* CCTV footage (0176-PG-3437236_0000014_1A0000007_0000002) at 1:00 to 1:25 mark. The video has been designated highly sensitive by the government.

*Dean v. United States*, 137 S.Ct. 1170, 1175 (2017) (internal citations omitted).A sentence that is "greater than necessary" is substantively unreasonable. *Holguin-Hernandez v. United States*, 140 S.Ct. 762, 766-67 (2020).

The Court must also consider:

the nature and circumstances of the offense

the history and characteristics of the defendant

the kinds of sentences available

the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a)(1), (a)(3) and (a)(6). However, in this case, the Court need not consider the pertinent Sentencing Commission guidelines and policies (under §§ 3553(a)(4), (5)) because the Guidelines do not apply to Class B misdemeanors.[3]

## II.   A Sentence of Twelve Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).

### A.   Mr. Perretta's Personal History and Characteristics

As noted above, Nicholas Perretta is a young man whose conduct in the instant case does not reflect who he is or how he has lived his life. He is a kind and hard-working young man, who contributes to his community through volunteer activities. He has never been arrested or been convicted of any criminal offenses. As many young people of limited means, he first attended community college to obtain an associate's degree. He then went on to university to obtain a

---

[3] "The sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction." U.S.S.G. § 1B1.9. "A Class B misdemeanor is any offense for which the maximum authorized term of imprisonment is more than thirty days but not more than six months." *Id*., application n. 1.

4

bachelor's degree.  He put himself through college, while working and incurring $120,000 in student loans, which he still owes.[4]  Having graduated from college at the height of the pandemic, his employment opportunities were limited.  So he has turned part time work which he has been pursuing since he was 14 years-old into a small business.

His parents have written a letter which explain the good that Nick has done in his life:

> As his parents, we are very proud of the many things he's done, his accomplishments and the man he's become. Since Nick was a little boy he has always been a thoughtful, kind and caring person.  For example: When it was his birthday he would always take cake next door to our elderly neighbors and on most random days he would sit with them on their porch just talking about the day or sometimes not talking at all.  When he was about 7 years old, he was concerned about a baby bird that was on the ground.  He saw a cat stalking it and became worried because it couldn't fly so he tried to save it by putting it in a storm drain.  He was so proud of himself when he told me. Unfortunately, there was a severe summer storm just moments later so you can imagine what happened to the bird.  Until this day I haven't had the heart to tell him.  When it comes to his friends, Nick is always there. Whether they need someone to talk to or to just listen. lf theyneeded a ride because their car is broken he wouldn't just pick them up he would help them fix their car. If a friend had problems at home or suddenly found themselves without a home he would open our home to them.  When his grandfather passed away in 2016, Nick took it upon himself to be the caretaker of our family.  He made sure his grandmother's finances were in order and that she was looked after.
>
> Nick has volunteered for several charities that are important to him such as The Special Olympics, Habitat for Humanity, The City of Pittsburgh Marathon and the Susan G. Koman Race for the Cure Marathon.  Also, during his employment with Target he purchased $100 worth of books to fill an empty donation bin that was used for one of Target's charities.
>
> Nick was offered an academic scholarship to attend Allegheny College in Meadville, PA.  Unfortunately during his freshman

---

[4]  *See* PSR at ¶¶ 48, 51-57, 60.

semester, he was involved in a car accident which left him with a severe concussion. His injury and other personal setbacks made it impossible for him to continue at Allegheny. He returned home and went to Community College of Beaver County where he earned his Entrepreneurial Certificate and his Associates Degree all while working full time. He graduated from Robert Morris University with a Bachelors Degree in Finance. He gained employment with NorthWestern Financial but due to the nature of this type of career and that it is mostly commission based the pandemic made it very difficult for him to develop a cliental of his own. However, at age 14 he started selling items on Ebay. He has turned this venture in to a successfully licensed online retail business.

In closing, as his parents we are biased of course but if you ask anyone who knows him they will speak highly of him. Certainly, he is not perfect but the man he has grown into would make anyparent proud.

Parents' letter attached as Ex. 1[5]

A childhood friend also writes of Mr. Perretta's good qualities:

Nick has always been there every step of the way from the time of my parent's divorce in 2006, when we was (sic) just kids. To the worst day of my life when my brother suddenly passed away in 2020. Nick constantly checked up on me. He was always calling and texting to check on my wellbeing. I honestly do not know how I would have got through my brothers passing without the care Nick showed through that time.

[H]e is such a role model to everyone in the community. From showing respect to everyone, he meets to the hustle he shows by starting his own business, He really pushes me to do better myself.

Letter from Clay Smith, attached as Ex. 2.

---

[5] Personal information has been redacted from the letters attached as exhibits due to safety concerns engendered by the January 6 cases, where persons whose names come to light receive hate mail and threats.

Another childhood friend speaks highly of Nick's friendship, his honesty and compassion. Notably, the friend explains that "Despite the current case I wholeheartedly believe Nick Perretta to be an honorable individual and a valuable member of his community. *See* Letter from Corey Davis, attached as Ex. 3.

B.     **Nature and Circumstances of the Offense**

Mr. Perretta accepted responsibility for the offense as soon as law enforcement interviewed him at his home in June 2021. He answered their questions and granted authority to access his phone. He admitted that he went with his friend to the Capitol Building and when shown images of himself and Mr. Vukich inside the Capitol identified them.

He did not come to D.C. to disrupt the proceedings or to participate in the chaotic scene that developed. He was swept along with the crowd and entered the Capitol through an open door. When interviewed by the FBI, he was truthful about the chaos he observed and did not minimize the situation. He also admitted that he saw a police officer knocked to the ground but that he also saw that persons around the officer immediately helped the officer to his feet. He himself did not participate in any confrontations with law enforcement.

While inside the building for a few minutes, he did not move with a mob of people. He entered a bathroom to wash the pepper spray from his face. He did not have any confrontation with law enforcement, did not destroy anything, and contrary to the government's contention, he did not take any papers from the Capitol. The government is simply incorrect that Mr. Perretta destroyed documents that he had taken from the Capitol. *See* Corrected Gov memo at 17 (ECF 47). As the CCTV-video shows, Mr. Perretta did not take any documents from the Capitol. After momentarily picking up and looking at papers that he found on the ground, Mr. Perretta placed the papers back

7

on the ground where they had been.

As noted by the letters submitted to the Court and by the absolute lack of any prior arrests, convictions or other contacts with law enforcement, Mr.  Perretta's condut on January 6, was completely out of Mr.  Perretta's good character that he has exhibited throughout his young life. Neither before nor after January 6, has Mr.  Perretta advocated violence or conspiracy theories on social media.  He is not a member of any organizations that have promoted any violence.  The few text messages that he exchanged with friends were short and honestly described what he had seen.

After January 6, 2021, Mr. Perretta has been embarrassed by his conduct.  His statement to Mr. Vukich that he did not believe they would get in trouble for entering the Capitol, only reflected that he personally had not destroyed property or acted violently and so mistakenly believed that their entry into the Capitol would not result in criminal charges.  It was not an expression of a sense of impunity.

### C.    The Kinds of Sentences Available

The offense to which Mr.  Perretta has pleaded guilty, which carries a statutory maximum of six-months imprisonment is designated a petty offense under the Criminal Code.[6]  As a Class B misdemeanor, a term of probation, with conditions that may include community service is also authorized. 18  U.S.C. § 3563(b)(12).

### D.    Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

The request for a term of probation acknowledges the need to promote respect for the law and provide just punishment as well as the fact that the offense is designated a petty offense under

---

[6]  An offense for which the maximum penalty is "six months or less but more than thirty days" is a Class B misdemeanor.  *See* 18  U.S.C. § 3559(a)(7).  In turn, Class B misdemeanors are defined as a "petty offense" under 18  U.S.C. § 19.

the United States Code. It reflects that Mr. Perretta himself did not engage in any violent conduct, destruction of property and did not have any confrontations with police. Furthermore, a sentence of probation is in line with similar past sentences imposed.

For example, in *United States v. Danielle Doyle*, 1:21-CR-324 (TNM), the court imposed a sentence of 2 months' probation. Like Mr. Perretta, the defendant in that case walked through the building for about 20-25 minutes with no incident and left. However, Mr. Perretta is less culpable than Mrs. Doyle because she did not climb through a broken window like Mrs. Doyle did. This case is more similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) where the court imposed a sentence of 12 months' probation. In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.

A number of cases reflect that imposing a term of imprisonment on Mr. Perretta would result in unwarranted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6) because Mr. Perretta's conduct and clear remorse contrast with the more lenient sentences imposed in those cases. For example, the Court in *United States v. Jonathan Sanders*, 1-21-CR-384 (CJN), imposed 36 months' probation for a defendant who had no criminal history, however showed a lack of remorse to the FBI during a recorded interview. In that case, the government recommended that the defendant serve two of those months on home detention, however the court imposed 60 hours of community service instead. Similarly, in *United States v. Jordan Stotts*, 21-CR-272 (TJK), the court imposed 24 months' probation for a defendant who shouted at MPD officers and posted comments following January 6 suggesting he may not have been remorseful for his actions.

In a non-January 6 case, Judge Cooper imposed 12-month terms of probation in cases where several defendants took turns shouting during a Supreme Court argument with the intent to disrupt the proceedings.  *See, e.g., United States v. Bronstein,* No. 15-cr-00048-CRC.

Ironically, while the Government cites to the case of *United States v. Bustle*, No. 21-cr-00238-TFH in support of its request that the Court impose a term of 1-month imprisonment, Judge Hogan imposed a term of probation in the *Bustle* case even though Ms.  Bustle's statements were much more culpable.

> Before traveling to the Capitol, [Ms.  Bustle] posted a message that read, in part, "We don't win this thing sitting on the sidelines. Excited to stand for truth with my fellow patriots and freedom fighters in D.C. today." During or after the riot, she posted a message that read, in part, "Pence is a traitor. We stormed the capital [sic].  An unarmed peaceful woman down the hall from us was shot in the neck by cops. It's insane here." In another message, apparently written after the riot, she wrote "We need a Revolution! We can accept an honest and fair election but this is NOT fair and patriots don't want to see their country brought into communism and destroyed over a lie."

*Bustle* Statement of Offense (ECF 25) at 4.  Ms. Bustle was sentenced to 24-months of probation, with a condition that she serve the first 60 days on home detention.  Judgment (ECF 42) at 2.

Another case cited by the government is also inapposite.  *United States v. Paul Hodgkins*, 21-cr-188 (RDM) involved a felony conviction for a violation of 18 U.S.C. § 1512(c)(2) for obstruction of an official proceedings, where Mr.  Hodgkins actually entered the Senate Chamber. He also carried rope and latex gloves in his backpack.  *See* Statement of Offense (ECF 23).

To the extent that the Court may look to statistics maintained by the Commission in misdemeanor cases generally, those cases are not comparable for purposes of § 3553(a)(6) because they do not involve "similar conduct."  The Commission does not maintain statistics on Class B

misdemeanors, which carry maximum penalties of 6-months imprisonment because such cases are not covered by the Sentencing Guidelines as noted in U.S.S.G. § 1B1.9.[7]

Lastly, with the exception of his conduct on January 6, Mr. Perretta's conduct throughout his life as well as his conduct since he was first interviewed by the FBI reflect that he is not a danger of recidivism. He ought to be sentenced for his conduct and not for the conduct of others, who acted violently or destroyed property. Anything else would result in unwarranted disparity prohibited by § 3553(a)(6) and result in disrespect for the law not to the fair administration of justice which § 3553(a) aims to accomplish.

## CONCLUSION

While the disruption that took place at the United States Capitol and violent conduct of some who entered the Capitol is reprehensible, Mr. Perretta cannot be sentenced on the basis of the conduct of others as it is a fundamental principle of our system of justice, "that guilt is personal and that it ought not lightly to be imputed to a citizen who, like [Mr. Perretta] has no evil intention or consciousness of wrongdoing." *United States v. Dotterweich*, 320 U.S. 277, 286 (1943). For all these reasons, Mr. Perretta respectfully requests that the Court impose a term of probation.

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391

---

[7] "To conduct the type of research outlined in the previous section, the Commission collects data regarding every felony and Class A misdemeanor offense sentenced each year." US Sentencing Commission 2020 Annual Report at 6.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the instant memorandum was served via email on counsel of record and stand-by counsel on January 4, 2022.

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**